IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GO PRO CONSTRUCTION, LLC,<br><br>        Plaintiff/Counter-Defendant,<br><br>v.<br><br>VALSTS NEKUSTAMIE IPASUMI,<br><br>        Defendant/Counter-Plaintiff. | Civil Action No. 1:22-cv-01643-RCL |

**<u>VALSTS NEKUSTAMIE IPASUMI'S REPLY IN SUPPORT OF MOTION TO COMPEL</u>**

      Defendant/Counter-Plaintiff Valsts Nekustamie Ipasumi ("VNI"), by its undersigned counsel, and pursuant to LCvR 7(d), hereby replies in support of its Motion to Compel Plaintiff/Counter-Defendant Go Pro Construction, LLC ("Go Pro") to fully answer the First Set of Interrogatories, respond to the First Set of Request for Production of Documents served upon it by VNI and to produce the responsive documents, and to pay VNI its reasonable attorneys' fees and costs incurring in the filing of the Motion to Compel and this Reply.  In support thereof, VNI states as follows:

      1.    On June 20, 2023, VNI filed its Motion to Compel Go Pro to provide full and complete answers to VNI's First Set of Interrogatories and First Set of Request for Production of Documents.  ECF 19.  Therein, VNI requests that this Court order Go Pro to fully respond to Interrogatory Nos. 19, 21, and 22; and Request Nos. 18, 23, 24, 25, 26, 27, 29, and 30.  *Id*.

      2.    On July 6, 2023, sixteen days after the filing of VNI's Motion to Compel and two days beyond the allotted time to file a response pursuant to LCvR 7(b), Go Pro filed its Opposition to Defendant's Motion to Compel.[1]  ECF 21.  Therein, Go Pro asserts that it has "fully and

---

[1] Go Pro does not address its failure to adhere to LCvR 7(b) in its Opposition, nor did Go Pro seek VNI's consent to submit its Opposition beyond the deadlines set by the Court.  *See Stephenson v. Cox*, 223 F.Supp.2d 119, 120 (D. D.C. 2002) ("When presented with a response filed late and without a request for an extension of time, a district court may reject the response and, consequently, treat the motion as conceded.") (internal citations omitted).

completely" answered the Interrogatories and provided all documentation responsive to the Document Requests. *Id.* at 1.

3. On the same day, however, the deposition of Go Pro's Rule 30(b)(6) corporate designee was taken.[2] During the course of the deposition, it became even more apparent that Go Pro has not, in fact, "fully and completely" answered VNI's Interrogatories nor provided all documentation responsive to VNI's Document Requests. In fact, Go Pro's discovery failures are now indisputable.

4. For example, Go Pro contends that its Answer to Interrogatory No. 19 is complete because "the only work that was performed (demolition and carpentry) was performed by Plaintiff's own/borrowed labor and not subcontractors." *Id.* at 2. During the deposition of Sameh Elrahimy, Go Pro's owner and Rule 30(b)(6) corporate designee, however, Go Pro testified that subcontractors had been involved in the project and that some contractors had been paid for their services. *See* Deposition of Sameh Elrahimy, attached as **Exhibit C**, p. 141 ll. 11-13 ("Mark Armstrong from Optimum would sometime come to the project to manage ..."); p. 163 ll. 19-20 ("I know J. Silcox was paid, but I'm not sure of the others."). To date, no such documentation has been produced.

5. Likewise, Go Pro states in its Opposition that "[Go Pro] had no reason to, and did not, calculate the actual cost of the work performed" that is the subject of Invoices #1 and #2 as requested in Interrogatory Nos. 21 and 22. *See* Opposition at 3-4. Go Pro, however, stated that man hours, payroll, equipment/material purchases, and payments to subcontractors would have been maintained in some capacity during the course of the Project. *See* **Exhibit C**, p. 29, 165.

---

[2] The deposition of Go Pro's corporate designee was properly noted to take place on June 26, 2023, within the fact discovery deadline of June 30, 2023. *See* Notice of Deposition, attached as **Exhibit A**; *see also* ECF 18. The deposition was rescheduled to take place outside of the discovery window following Go Pro's cancellation of the deposition the business day prior to June 26, 2023. *See* **Exhibit B**.

Each of these aspects of the Project relate directly towards any determination of actual cost incurred by Go Pro in completing the work included in Invoices #1 and #2. To date, no such documentation has been produced.

6. As for the Document Requests, Go Pro's testimony directly contradicts the assertions set forth in its Opposition.

7. Request No. 18 seeks all internal cost estimates, take offs, bid work sheets, bid summaries, bid papers and pricing documents prepared by or for Go Pro concerning the Project. In its Response, Go Pro states it "does not possess any other documents" other than a three (3) page Bid Proposal submitted to VNI. Go Pro's position is not credible. It is inconceivable that a licensed contractor "providing general contracting services in both residential and commercial construction throughout the Washington DC Metropolitan area," *see* ECF 1 at p. 3, would submit a bid to perform work for $1,125,000 without an internal calculation or estimate of costs to perform the work. In any event, that position was contradicted by Go Pro's corporate designee. Go Pro testified that it always completed some sort of assessment or evaluation when preparing a bid proposal. *See* **Exhibit C**, p. 46 ll. 3-10. To date, however, Go Pro has not provided any documentation reflecting any internal estimate, assessment or calculation prepared in drafting the Bid Proposal.

8. Request No. 23 seeks all documents that constitute, refer, relate or pertain to actual costs incurred by Go Pro in connection with the Project. In its response, Go Pro stated it "had no reason to keep cost records." Again, this directly contradicts Go Pro's testimony that it maintained records and/or documents reflecting man hours, payroll, equipment/material purchases, and payments to subcontractors would have been maintained in some capacity during the course of the Project.

9. Request No. 24 seeks Go Pro's financial statement for 2021 and 2022, including all appendices, exhibits, notes, and accountant's letters. Go Pro responds by asserting such documentation is irrelevant and not reasonably calculated to lead to the discovery of information relevant to this dispute. Accepting Go Pro's contentions to date as true, however, no other documentation exists indicating job costs incurred by Go Pro as it relates to the Project. As such, Go Pro's financial statements are relevant and highly probative in potentially showing costs incurred and what payments, if any, Go Pro may have made to subcontractors, suppliers, or other third parties utilized in completing work on the Project. Furthermore, Go Pro testified that financial information was provided to its accountant for tax filing purposes in 2021. *Id.* at p. 32 ll. 4-16; p. 68 ll. 19-20. This information may include information regarding job costs for the Project that has otherwise been destroyed or lost by Go Pro, which destruction may become the subject of a subsequent motion.

10. Request No. 25 seeks all documents that constitute, refer, relate or pertain to the number of man hours expended by Go Pro and the calculations of the average monthly man hours necessary for the construction of the Project. In its response, Go Pro stated it "employed labor from Optimum Construction" and that the "only documents that would conceivably pertain to the amount of work performed by its labor would be the Progress Reports[.]" Go Pro testified, however, that it utilized only Go Pro employed laborers for the Project, and Go Pro laborers maintained their time at construction projects through either a phone application or documentation provided to project crew leaders. *Id.* at p. 17 ll. 4-12; p. 137-38. Further, he testified that Go Pro would prepare work schedules relating to the assignment of laborers to a given project. *Id.* at p. 165 ll. 3-13. To date, no man hour records or work schedules have been produced. In fact, Go Pro's corporate designee testified that he did not recall if Go Pro even searched for the requested

man hour documentation in responding to VNI's discovery requests. *Id.* at p. 138-39 ("I would have to check. Look into that.").

11. Likewise, Request No. 26 seeks all documents that constitute, refer, relate or pertain to Go Pro's payroll journals for the Project. In its response, Go Pro simply states "None." As previously discussed, Go Pro employees documented their time at construction projects. *See infra*. Further, Go Pro laborers on the Project were paid hourly based on those time records, with payments made via check from Go Pro's bank account with CitiBank. **Exhibit C**, p. 28 ll. 12-21. Go Pro confirmed it currently has access to the Capital One account in which payroll payments are made. *Id.* at p. 23 ll. 4-15. To date, no payroll documentation has been produced.

12. Request No. 27 seeks all other documents that constitute, refer, relate or pertain to the methodology or calculation of rates, charges, job costs, material costs, overhead, and profit for the Project. Go Pro responds by stating that it has produced all such documentation. In Go Pro's deposition, however, the corporate designee stated that Go Pro has always completed some sort of assessment or evaluation when preparing a bid proposal. *Id.* at p. 46 ll. 3-10; p. 26-27.

13. Request No. 29 seeks all documents pertaining to any internal analyses or review by Go Pro of applications or requests for payment and/or Go Pro's subcontractors' applications or requests for payment for the Project. Go Pro responds by stating the only responsive documents are the invoices submitted to VNI. *See* Opposition at 8. In Go Pro's deposition, however, the corporate designee stated that Go Pro may have made payments to subcontractors, including Optimum. **Exhibit C**, p. 145 ll. 19-22. The bank account records are both responsive and discoverable, and Go Pro has failed to produce such documentation.

14. Finally, Request No. 30 seeks documents that constitute, refer, relate or pertain to Go Pro's original or revised budget(s), bid(s), or estimate(s) for the original and any revised scope of work for the Project, and all back-up documents including, but not limited to, all take offs, bid papers, work

papers, quotes, summary sheets, and subcontractor and supplier pricing. In its Response, Go Pro states that the Bid Proposal, bid scope of work, and Contract are the only responsive documents in its possession. *See* Opposition at 8-9. Go Pro, however, testified that it has always completed some sort of assessment or evaluation when preparing a bid proposal. *See* **Exhibit C**, p. 46 ll. 3-10. Further, Go Pro testified that subcontractors may have been paid for materials supplied or work performed. *Id.* at p. 141 ll. 11-13; p. 163 ll. 19-20. To date, however, Go Pro has not provided any documentation reflecting any estimates prepared or subcontractors paid.

15. Pursuant to Fed. R. Civ. P. 33(b), Go Pro was required to answer each interrogatory separately and fully in writing under oath. Further, pursuant to Fed. R. Civ. P. 34(b)(2), Go Pro was required to produce documents and/or electronically stored information responsive to VNI's requests and label them to correspond to the categories in the requests.

16. Go Pro has provided deficient discovery responses to Interrogatory Nos. 19, 21 and 22 and failed to produce certain documents responsive to Request for Production of Documents Nos. 18, 23, 24, 25, 26, 27, 28, and 30. The corporate designee of Go Pro confirmed the existence, at least at the time of the Project, that certain documentation was created that is responsive to VNI's discovery requests. The continued failure by Go Pro to produce such information and documentation is a clear, willful violation of the Federal Rules of Civil Procedure.

17. VNI requests an award of costs and expenses, including attorneys' fees, incurred in the filing of its motion and this Reply under Fed. R. Civ. P. 37(a)(5).

ACCORDINGLY, for the foregoing reasons, VNI respectfully requests that the Court grant its Motion to Compel and enter an Order compelling Go Pro to produce full and complete Answers to the First Set of Interrogatories and Responses to the First Set of Requests for Production of Documents and produce the responsive documents within seven (7) days and to pay VNI its

reasonable attorneys' fees and costs incurred in filing its Motion and Reply.

DATED:  July 13, 2023

Respectfully submitted,

*/s/ Michael S. Schollaert*
Michael S. Schollaert (Bar ID: MD0054)
Zachary S. Gilreath (Bar ID: MDMD0137)
BAKER, DONELSON, BEARMAN, CALDWELL
& BERKOWITZ, P.C.
100 Light Street, 19th Floor
Baltimore, MD 21202
T: (410) 862-1135
E: mschollaert@bakerdonelson.com /
zgilreath@bakerdonelson.com

*Counsel for Valsts Nekustamie Ipasumi*

### CERTIFICATE OF SERVICE

I certify that on this 13th day of July 2023, a copy of Defendant/Counter-Plaintiff's Reply in Support of VNI's Motion to Compel was served on all counsel of record via the Court's CM/ECF system.

*/s/ Michael S. Schollaert*
Michael S. Schollaert (Bar ID: MD0054)