UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GO PRO CONSTRUCTION, LLC,<br><br>*Plaintiff/Counter-Defendant,*<br><br>v.<br><br>VALSTS NEKUSTAMIE IPASUMI,<br><br>*Defendant/Counter-Plaintiff.* | Case No. 1:22-cv-1643-RCL |

### MEMORANDUM AND ORDER

This case arises out of an ill-fated contract to renovate the Embassy for the Republic of Latvia (the "Project"). On January 31, 2024, the Court held a discovery hearing and granted the motion for discovery sanctions filed by defendant/counter-plaintiff Valsts Nekustamie Ipasumi against plaintiff/counter-defendant Go Pro Construction, LLC. The Court further ordered VNI to submit a statement of its costs and appropriate sanctions and gave plaintiffs an opportunity to respond. On review of the parties' submissions, the procedural history of this case, and the applicable law, the Court concludes that Go Pro has violated the Court's August 21, 2023 Order, and that it falsely certified that it had searched for and produced responsive records as required by that Order. Go Pro's disregard for its discovery obligations and disrespect for the orders of this Court has prejudiced VNI, wasted judicial resources, and presented the need for deterrence. The Court therefore **GRANTS** VNI's Motion for Sanctions. Although the Court declines to enter default judgment, it will award VNI attorney's fees and costs and will prohibit Go Pro from introducing evidence relating to costs it incurred on the Project and from opposing findings and opinions concerning those costs by VNI's expert. VNI's Petition for Attorney's Fees, Statement of Costs, and Proposed Sanctions is accordingly **GRANTED IN PART** and **DENIED IN PART**.

1

## I.   BACKGROUND

**A. The Latvian Embassy Project**

Go Pro filed its complaint in this Court on June 8, 2022, alleging breach of contract and violation of the District of Columbia Prompt Payment Act based on VNI's failure to pay the amounts invoiced. Compl., ECF No. 1. VNI filed an answer and counterclaims, alleging breach of contract for wrongfully retaining payment in excess of the value of actual work performed after VNI's termination for convenience, as well as for negligently damaging historic handrails on the property. Answer & Counterclaims, ECF No. 5.

Under the contract, Go Pro agreed to carry out the Project for VNI. *See* Compl. ¶ 7; Answer & Counterclaims 4. The contract required VNI to make payments to Go Pro according to a draw schedule, subject to a 5% retainage. *See* Compl. ¶ 8; Contract §§ 4.2, 4.3, Ex. 1 to Compl., ECF No. 1-1. The parties agree that Go Pro commenced work on the Project and that VNI paid Go Pro $327,750 after Go Pro's first invoice in accordance with the draw schedule, but that eventually the parties disagreed over the scope of the work and VNI did not submit the second payment under the draw schedule. *See* Compl. ¶¶ 9–10, 13; Answer & Counterclaims ¶¶ 19–20.

What the parties dispute is who terminated the contract. Go Pro alleges it terminated the contract in response to VNI's failure to pay, in which case Go Pro is entitled to recover "payment for Work executed including reasonable overhead and profit, and costs incurred by reason of such termination." *See* Compl. ¶ 16; Contract § 16.1. But VNI alleges that *it* terminated the contract for convenience, meaning Go Pro is entitled only to the value of "works actually performed until the termination of the Contract." Answer & Counterclaims ¶¶ 28–30 (citing Contract § 16.3). Since VNI has calculated the value of Go Pro's work at $311,035.75—less than the amounts VNI already paid Go Pro pursuant to the draw schedule—it seeks reimbursement of the difference. *Id.* ¶ 30.

### B. Discovery Dispute

The case proceeded to discovery, which was scheduled to complete by August 31, 2023. *See* Scheduling Order, ECF No. 14. But "[a]fter the parties exchanged discovery requests and responses, VNI sent a number of emails attempting diligently—but ultimately unsuccessfully—to secure fuller responses to some of its interrogatories and document requests." Aug. 21, 2023 Mem. Order 2 ("Aug. 21 Order"), ECF No. 23. VNI then filed a motion to compel, arguing that Go Pro had not fully answered its interrogatories or fully produced requested documents. *See* Mot. to Compel., ECF No. 19. Essentially, VNI sought cost records and financial information relevant to the actual costs incurred by Go Pro on the Project before work stopped. On August 21, 2023, the Court issued an Order that granted in part and denied in part VNI's motion to compel. In that order, the Court found that "[f]or seven of the eight document requests that are the subject of the present motion—Nos. 18, 23, 24, 25, 26, 27, and 30—VNI points to significant evidence suggesting that Go Pro's responses were incomplete or evasive." Aug. 21 Order 6. But the Court also recognized that "Go Pro insists that it does not have additional responsive documents, and the Court cannot order Go Pro to produce documents that it does not possess." *Id.*

The Court thus imposed the following remedy:

> Accordingly, the Court will order Go Pro to conduct an additional search for documents responsive to Document Requests No, 18, 23, 24, 25, 26, 27, and 30 and, to the extent that that search does not result in additional disclosures, to make the person who conducts it available for a deposition about its scope and results. In the event that the additional search and/or deposition make clear that Go Pro wrongfully withheld documents, the Court will order Go Pro to pay VNI's attorneys' fees incurred not only in litigating the present motion, but in taking the deposition. Furthermore, the Court will order Go Pro to certify to the Court upon the completion of discovery that it conducted a thorough search for documents responsive to Document Requests Nos. 18, 23, 24, 25, 26, 27, and 30, and that no responsive documents exist beyond those disclosed to VNI.

Aug. 21 Order 11.

On September 15, the parties submitted a Joint Status Report. *See* ECF No. 25. In the report, Go Pro stated that it "is reviewing its files to determine what if any documents respond to the specified Requests as directed by the Court." *Id.* at 1. It assured the Court that it "expects to complete its review on or before September 22, 2023, and will submit its Supplemental Answers to Interrogatories, additional documents, if any, and the requested Certification at that time." *Id.* However, on October 3, VNI filed a motion for sanctions, alleging that "[t]o date, Go Pro has failed to produce any additional documents, nor has Go Pro submitted the Certification as required by the Court's August 21, 2023 Order." Mot. for Sanctions 2, ECF No. 26. Go Pro filed no opposition.

The Court then ordered Go Pro to show cause why the Court should not impose sanctions for its conduct and failure to follow Court orders. ECF No. 27. Go Pro's counsel explained that he had missed VNI's motion for sanctions, stated that Go Pro had made additional disclosures, and argued that Go Pro had always acted in good faith and adhered to the orders of the Court. *See* Pl.'s 1st Response to Order to Show Cause 3–4, ECF No. 28. VNI filed a response in which it argued that Go Pro had still failed to adhere to the Court's August 21 Order by not producing three categories of key information. Def.'s Response to Order to Show Cause 3–5, ECF No. 29. First, VNI asserted that Go Pro had failed to produce "any financial information," including documentation to respond to Document Request No. 24, which requested Go Pro's "yearly audited financial statement for 2021 and 2022, including all appendices, exhibits, notes, and accountant's letters." *Id.* 3–4. Second, VNI contended that Go Pro had not supplemented its response to Document Request No. 26, which sought "[a]ll documents that constitute, refer, relate or pertain to [Go Pro's] payroll journals for the Project." *Id.* at 4. Third, VNI argued that Go Pro had failed to produce documentation prepared prior to litigation that would be responsive to Document

4

Request No. 18, involving "[a]ll internal cost estimates, take offs, bid work sheets, bid summaries, bid papers and pricing documents prepared by or for [Go Pro] concerning the Project." *Id.* at 4–5.

In reply, Go Pro insisted that "Plaintiff has no other records responsive to the subject Requests for Production." Pl.'s 2d Response to Order to Show Cause 3, ECF No. 30.

The Court held a discovery hearing on December 15, 2023, after which it gave Go Pro until January 9, 2024 to certify its compliance with the August 21 Order—meaning that it had conducted a thorough search for documents responsive to Document Requests Nos. 18, 23, 24, 25, 26, 27, and 30 and that no responsive documents exist beyond those disclosed to VNI. *See* ECF No. 31. It also ordered VNI to complete its deposition of the person who conducted the additional search for documents, Sameh Elrahimy, before the next hearing.

On January 8, 2024, Go Pro filed its discovery certification. Mr. Elrahimy, president and owner of Go Pro, certified that he had personally conducted a search of Go Pro's records for documents responsive to Request for Production of Documents Nos. 18, 23, 24, 25, 26, 27, and 30. Pl.'s Discovery Certification, ECF No. 33-1. He then stated that "[a]fter completing the above described searches, I am confident that all responsive documents within the possession, custody, or control of Go Pro Construction, LLC have been delivered to my counsel for production in this case." *Id.* at 3. On January 29, Mr. Elrahimy testified at a further deposition. *See* Elrahimy 2d Dep. Tr., Ex. A to Def.'s Br., ECF No. 34-2.

Two days later, the Court held a final discovery hearing. At the hearing, counsel for VNI highlighted discrepancies between Mr. Elrahimy's deposition and his certification, arguing that the certification was inaccurate and that Go Pro had failed to comply with the August 21 Order. The Court agreed and granted the motion for sanctions. It directed VNI to file a statement of costs

and appropriate sanctions and gave Go Pro the opportunity to file a response. Since then, VNI has filed a Motion for Attorney's Fees, Statement of Costs, and Proposed Sanctions and Go Pro has filed a response. *See* Def.'s Br., ECF No. 34; Pl.'s Br., ECF No. 35.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 34, "a party must produce all discoverable documents, information or things in response to a request that are in the producing party's 'possession, custody, or control.'" *Walls v. Paulson*, 250 F.R.D. 48, 50 (D.D.C. 2008) (quoting Fed. R. Civ. P. 34(a)(1)). And "[u]nder Rule 26, a party is obligated to make a reasonable effort to search for and produce documents responsive to the opposing party's document requests." *Moore v. Napolitano*, 723 F. Supp. 2d 167, 173 (D.D.C. 2010) (citing Fed. R. Civ. P. 26(g) advisory committee's note to 1983 amendment). Moreover, "[a] party has a duty to preserve potentially relevant evidence . . . once [that party] anticipates litigation." *Williams v. Ct. Servs. & Offender Supervision Agency for D.C.*, 937 F. Supp. 2d 41, 43 (D.D.C. 2013) (alteration in original) (citation omitted).

Courts enforce discovery rules through the mechanisms of Rule 37 and the measures within a court's inherent authority. *See* Fed. R. Civ. P. 37; *Shepherd v. Am. Broad. Companies, Inc.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995). Rule 37 permits a party to file a motion to compel discovery if, among other reasons, the opposing party "fails to produce documents . . . requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv). An evasive or incomplete response is treated as a failure to respond. Fed. R. Civ. P. 37(a)(4). "If a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, including an order" compelling discovery under Rule 37(a), the court "may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). These orders "may include" (i) "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims," (ii) "prohibiting

6

the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," (v) "dismissing the action or proceeding in whole or in part," and (vi) "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A).  Furthermore, "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Rule 37(b)(2)(C).

"'Under Rule 37, the district court has broad discretion to impose sanctions for discovery violations' and to determine what sanctions to impose." *DL v. District of Columbia*, 256 F.R.D. 239, 242 (D.D.C. 2009) (Lamberth, C.J.) (quoting *Bonds v. District of Columbia*, 93 F.3d 801, 807 (D.C. Cir. 1996)).  Yet since "[t]he central requirement of Rule 37 is that" sanctions be just, that "requires in cases involving severe sanctions that the district court consider whether lesser sanctions would be more appropriate for the particular violation." *Bonds*, 93 F.3d at 808.  In deciding between a discovery sanction that approaches the severity of a default judgment or milder measures, the court should consider "the effect of a plaintiff's contumacious conduct on the court's docket, whether the plaintiff's behavior has prejudiced the defendant, and whether deterrence is necessary to protect the integrity of the judicial system." *Bonds*, 93 F.3d at 808 (quoting *Bristol Petroleum Corp. v. Harris*, 901 F.2d 165, 167 (D.C. Cir. 1990)).

### III.   DISCUSSION

In light of Mr. Elrahimy's deposition testimony, the Court finds that Go Pro has violated its discovery obligations and flouted the August 21 Order of this Court.  As a sanction, the Court will require Go Pro to pay the reasonable expenses, including attorney's fees, that VNI has incurred in litigating this discovery dispute.  The Court will also restrict Go Pro's ability to establish or

7

contest the amount of its actual costs incurred on the Project.  However, the Court will not enter default judgment against Go Pro.

    **A.  The Court Finds That Go Pro Has Violated Its Discovery Obligations and the Order of this Court**

The Court has granted VNI's Motion for Sanctions because Go Pro has violated its discovery obligations and the order of this Court by wrongfully withholding documents and failing to search for records.  The Court further finds that Mr. Elrahimy's certification of compliance with the Court's August 21 Order was willfully false.

That order required Go Pro "to conduct an additional search for documents responsive to Document Requests Nos. 18, 23, 24, 25, 26, 27, and 30" and "to certify to the Court upon the completion of discovery that it conducted a thorough search for documents responsive to" those requests "and that no responsive documents exist beyond those disclosed to VNI."  Aug. 21 Order 11.  Mr. Elrahimy duly certified that he had personally conducted a search and supervised his office manager in searching Go Pro's records for documents responsive to each of those requests and that he was "confident that all responsive documents within the possession, custody, or control of Go Pro Construction, LLC have been delivered to my counsel for production in this case."  Pl.'s Discovery Certification 3.

The Court has previously expressed skepticism that Go Pro has been forthright and forthcoming about documents in its possession.  In its August 21 Order, the Court found that "Go Pro likely gave incomplete or evasive responses" to Document Request Nos. 18, 23, 24, 25, 26, 27, and 30.  Aug. 21 Order 6.  For example, Document Request No. 18 requested "[a]ll internal cost estimates, take offs, bid work sheets, bid summaries, bid papers and pricing documents prepared by or for [Go Pro] concerning the Project."  *Id*.  The Court noted that it shared VNI's skepticism "that a licensed contractor providing general contracting services in both residential

8

and commercial construction throughout the Washington DC Metropolitan area . . . would submit a bid to perform work for $1,125,000 without an internal calculation or estimate of costs to perform the work," especially in light of Mr. Elrahimy's deposition testimony that Go Pro "always completed some sort of assessment or evaluation when preparing a bid proposal." *Id.* (first quoting Def.'s Reply in Support of Mot. to Compel 3, ECF No. 22, and then citing Elrahimy 1st Dep. Tr. 46:3–10, Ex. C. to Reply in Support of Mot. to Compel, ECF No. 22-3).

Similarly, Document Request No. 23 requested "[a]ll documents that constitute, refer, relate or pertain to actual costs incurred by [Go Pro] in connection with the Project including, but not limited to, a detailed job cost report for the Project and a journal ledger for individual costs." Aug. 21 Order 7. The Court noted that Mr. Elrahimy had testified that "Go Pro regularly keeps records of such things as man hours, payroll, and equipment and material purchases." *Id.* (citing Elrahimy 1st Dep. Tr. 29:4–11, 165:3–6). "It strains credulity," the Court concluded, "to think that Go Pro conveniently neglected to keep such records for this particular Project." *Id.* But because the Court recognized it could not order Go Pro to produce documents it does not possess, the Court ordered Go Pro to conduct a further search and certify its compliance—while reserving the possibility of appropriate corrective action "[i]n the event that the additional search and/or deposition make clear that Go Pro wrongfully withheld documents." *Id.* at 6, 11.

Mr. Elrahimy's January deposition makes clear that Go Pro has not complied with the Court's August 21 Order and that Mr. Elrahimy falsely certified that he had conducted thorough but fruitless searches. In his deposition, Mr. Elrahimy repeatedly contradicted the assurances he had given the Court earlier that month. For instance, Mr. Elrahimy certified that he had thoroughly searched for items responsive to Document Request No. 25, which concerns the number of man hours expended by Go Pro, and Document Request No. 26, which involves Go Pro's payroll

journals for the Project. Resp. to Request for Prod. of Docs. ("Doc. Resp.") 6, Ex. E to Def.'s Mot. to Compel, ECF No. 19-5. Yet in his deposition, Mr. Elrahimy expressed his belief that Go Pro may have documentation showing which employees worked on the Project on which days, but that it had not yet turned over this information. *See* Elrahimy 2d Dep. 37:18–39:11. Similarly, he said that Go Pro maintains an internal text messaging group to determine where employees are working daily but that he had not reviewed those records either. *See id.* at 56:5–57:15.

Mr. Elrahimy also certified that he had thoroughly searched for internal pricing documents (Document Request No. 18), documents relating to actual costs incurred by Go Pro in connection with the Project (Document Request No. 23), and documents relating to calculation of rates, material costs, and the like associated with the Project (Document Request No. 27). Although during his July deposition Mr. Elrahimy had stated that Go Pro had a bank account with Capital One that it used to make payments for its projects in general, Elrahimy 1st Dep. Tr. 143:1–2, 145:19–22, in his January deposition he could not recall whether he had reviewed statements from this bank account to determine whether it contained evidence of costs incurred in the course of the Project, Elrahimy 2d Dep. Tr. 19:9–20:4. He also stated that Go Pro may have used its Capital One bank account to pay a subcontractor for the Project, *see id.* at 22–23, and that the bank account records would indicate whether Go Pro had made payments to a subcontractor for the Project, *see id.* at 48–49. Mr. Elrahimy added that he had not reviewed Go Pro's credit card statements to determine if they indicated that Go Pro had actually paid a supplier for the Project, *id.* at 67–68, and that he had not reviewed his email accounts for copies of receipts relating to the Project, *id.* at 73–74. In addition, Mr. Elrahimy stated that he did not know if a particular software system had information about the Project, but that he had not checked. *See id.* at 90–91. Finally, he

acknowledged that he was unaware of any steps Go Pro had taken since initiating litigation to preserve documents relating to the Project. *See id.* at 92.

Go Pro nonetheless maintains that it has acted in good faith and in compliance with the Court's orders. Pl.'s Br. 5. Yet it makes no attempt to explain Mr. Elrahimy's damning acknowledgments in his deposition except to say that "[t]here were no specific Requests for Production of Documents requesting credit card statements or bank records per se" and the "nuance" that these records could be responsive to Request No. 23 "may have escaped the Plaintiff who's [sic.] native language is Arabic." *Id.* at 5 n.2. The Court is unpersuaded by the suggestion that, after many months of legal wrangling and what the Court presumes would have been clear advice from Go Pro's seasoned counsel Rodrick R. Barnes, Mr. Elrahimy simply did not comprehend the meaning of VNI's discovery requests. That is especially unlikely because even before the disastrous deposition, Mr. Barnes expressed his concern that a deposition of Mr. Elrahimy would reveal his client was improperly withholding documents from VNI. Dec. 15, 2023 Hearing Tr. 4:22–5:2, ECF No. 36 (explaining that Go Pro had not yet certified compliance with the Court's August 21 order because counsel "was worried . . . that when I made [Mr. Elrahimy available], that if there were additional documents that were teased out by defense counsel that he did not identify or disclose to me, that we -- our certification would have been invalid before that and it would have been sanctionable").

It is plain as day that Mr. Elrahimy did not conduct thorough searches for responsive documents as required by the Court. His testimony also underscores Go Pro's failure to comply with its discovery obligations. His acknowledgment that several forms of potentially relevant evidence had not been produced shows that Go Pro has wrongfully withheld those responsive documents. The Court further concludes that Go Pro has likely failed to produce other records

that either it no longer possesses, in which case sanctions may be appropriate for spoilation, or that it possesses but still has not produced, in which case sanctions are appropriate for defiance of the rules of discovery and orders of this Court.[1] The Court will therefore proceed to determine an appropriate remedy.

### B. The Court Will Impose Sanctions

The Court declines VNI's invitation to impose a default judgment. It will instead order the serious but comparatively mild sanctions of requiring Go Pro to pay certain reasonable expenses of VNI and restricting Go Pro's ability to establish or contest the amount of actual costs incurred by Go Pro.

**1. The Court Will Award Attorney's Fees and Costs**

In light of Go Pro's violation of its discovery obligations and the orders of this Court, the Court will order Go Pro to pay the expenses and attorneys' fees requested by VNI.

VNI has requested an order awarding $35,153.27 in costs and attorney's fees. Def.'s Br. 3–4. In support of this figure, it has filed Affidavits of Attorneys' Fees and Verified Statements. *See* Ex. B to Def.'s Br., ECF No. 34-3; Ex. C to Def.'s Br., ECF No. 34-5. VNI explains that "the

---

[1] The Court cannot credit plaintiff's belated explanation that it never possessed meaningful documentation of its expenses on the Project because it was essentially a stalking horse for another company. At the January 31 discovery hearing, Go Pro's counsel asserted that Go Pro had an "unorthodox arrangement" whereby Mr. Elrahimy farmed out Go Pro's operations relating to the Project to American Consulting and Construction (AC&C), a company owned by his father Raouf Elrahimy. *See* Jan. 31, 2024 Hearing Tr. 7–8, ECF No. 37. According to Go Pro's counsel, although VNI contracted with Go Pro for the Project, Raouf Elrahimy "used Go Pro Construction to obtain this work and to perform this work" and "[t]he Go Pro people don't have a lot of information or knowledge about what transpired on this project." *Id.* at 8:15–24; *see also id.* at 10:22–23 ("[I]n name only, this was a Go Pro project"). This assertion is flatly inconsistent with plaintiff's own Complaint. *See* Compl. ¶ 20 ("Go Pro fully performed its obligations under the Agreement. VNI accepted Go Pro's work and VNI is using the work to this day."). It contradicts Go Pro's Answer to VNI's counterclaims. *See* Answer to Counterclaim ¶¶ 19, 21 (admitting that Go Pro performed work on the contract). It conflicts with Mr. Elrahimy's first deposition testimony. *See, e.g.*, Elrahimy 1st Dep. Tr., 140:6–7 (stating that all labor on the Project was provided by Go Pro). And it contravenes Go Pro's answers to VNI's interrogatories, as Go Pro did not list AC&C as one of its subcontractors who performed work on the Project. *See* Pl.'s Answers to Interrogatories, Answer to Interrogatory No. 18, Ex. D to Mot. to Compel, ECF No. 19-4. In any event, even if plaintiff's counsel is correct that many records were never in Go Pro's possession, Mr. Elrahimy's deposition demonstrates that certain documents *were* within Go Pro's possession but were withheld nonetheless.

12

amounts requested . . . include only time specifically devoted to VNI's June 20, 2023 Motion to Compel and related pleadings; VNI's October 3, 2023 Motion for Sanctions, related pleadings, and oral argument; the July 6, 2023 deposition of Go Pro's corporate designee, Sameh Elrahimy; and the January 29, 2024 deposition of Mr. Elrahimy." Def.'s Br. 4. The attorney fees and costs requested by Go Pro also include activities relating to the January 31 discovery hearing and the post-hearing filing. *See* Ex. B to Def.'s Br. 25–26. Go Pro does not contest VNI's calculation of costs and attorney's fees.

At the very minimum, Rule 37 entitles VNI to the reasonable expenses, including attorney's fees, caused by Go Pro's failure to comply with the Court's August 21 Order. *See* Fed. R. Civ. P. 37(b)(2)(C). Go Pro's failure to comply with the Court's order to conduct additional searches for records responsive to VNI's discovery requests, despite certifying its compliance, caused VNI to incur expenses relating to the January 31 discovery hearing and the post-hearing filing. Go Pro's failure to comply lacks any substantial justification, and awarding these expenses would not be unjust. VNI is entitled to reasonable expenses associated with those activities.

Next, VNI is also entitled to reasonable expenses, including attorney's fees, incurred in litigating its June 20, 2023 motion to compel and related pleadings; its follow-on motion for sanctions, related pleadings, and oral argument; and its July 6, 2023 and January 29, 2024 depositions of Mr. Elrahimy. The Court previously warned in its August 21 Order that it would order Go Pro to pay attorneys' fees incurred by VNI both in litigating its motion to compel and in initially deposing Mr. Elrahimy "[i]n the event that the additional search and/or deposition make clear that Go Pro wrongfully withheld documents." Aug. 21 Order 11.[2] Such a sanction is

---

[2] In requiring Go Pro to pay these expenses, the Court does not rely on Rule 37(b), because "[a] production order is generally needed to trigger Rule 37(b)." *Shepherd*, 62 F.3d at 1474 (quoting *Attorney General v. The Irish People, Inc.*, 684 F.2d 928, 951 n.129 (D.C. Cir. 1982)). Rather, the Court relies on its inherent power, which enables a court

appropriate because Go Pro's withholding of documents, even after Mr. Elrahimy falsely certified that he had conducted thorough searches, has sidetracked this case for months and forced VNI to file several motions and appear for two hearings. *See Shepherd*, 62 F.3d at 1475 (noting that "the overriding purpose of the inherent power is 'to achieve the orderly and expeditious disposition of cases[.]'") (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)).

### 2. The Court Will Impose Further Sanctions, But Not Default Judgment

The Court will decline to dismiss Go Pro's claims. However, Go Pro's misconduct has been sufficiently prejudicial to VNI, disruptive to the Court's docket, and disrespectful to the judicial system that the Court will grant VNI's alternative request to essentially prevent Go Pro from challenging VNI's estimate of Go Pro's actual costs incurred on the Project.

VNI requests that the Court dismiss Go Pro's claims against it. Sanctions Mot. 3. VNI also asks the Court to prohibit Go Pro from opposing the findings and opinions of VNI's expert witness, Neil Sinclair, concerning the actual costs Go Pro incurred on the Project and to preclude Go Pro from introducing any evidence concerning those costs. Def. Br. 4. VNI requests these sanctions because it argues that Go Pro's failure to either produce documentation concerning the costs incurred on the Project or explain that such records do not exist has unfairly prejudiced VNI's ability to defend itself against the claims brought by Go Pro and pursue its counterclaims. Sanctions Mot. 3. Dismissing Go Pro's claims would amount to a default judgment. Granting the requests concerning the actual costs would come close to establishing an evidentiary ruling adverse to Go Pro—but would not end litigation, because liability would still hinge on the question of

---

to impose sanctions, including awards of attorneys' fees and expenses, "[w]hen rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process." *Id.*

whether Go Pro terminated the contract in response to VNI's failure to pay or VNI terminated the contract for convenience.

The Court will not dismiss Go Pro's claims, because although Go Pro's violations have prejudiced VNI, engendered delay and needless motions practice, and demonstrated disrespect requiring a deterrent response, a more appropriate lesser sanction is available. *See Bonds*, 93 F.3d at 808–09. The Court has authority to grant litigation-ending sanctions pursuant to both Rule 37 and its inherent authority. *See* Fed. R. Civ. P. 37(b)(2)(A)(v)–(vi); *Shepherd*, 62 F.3d at 1475. Nonetheless, the D.C. Circuit has recognized "our judicial system's strong presumption in favor of adjudications on the merits." *Shepherd*, 62 F.3d at 1475. Accordingly, "'dismissal is a sanction of last resort to be applied only after less dire alternatives have been explored without success' or would obviously prove futile." *Shea v. Donohoe Const. Co.*, 795 F.2d 1071, 1075 (D.C. Cir. 1986) (quoting *Trakas v. Quality Brands, Inc.*, 759 F.2d 185, 186–87 (D.C. Cir. 1985)). Here, the less dire alternative is to prohibit Go Pro "from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii). Although restricting Go Pro's ability to dispute its actual costs is a severe sanction, it is appropriate in light of Go Pro's callous disregard of its discovery obligations. "In determining whether a severe sanction is justified, the district court may consider the resulting prejudice to the other party, any prejudice to the judicial system, and the need to deter similar misconduct in the future." *Bonds*, 93 F.3d at 808. Here, each of those factors supports a preclusion order.

First, Go Pro's behavior has significantly prejudiced VNI's ability to present its case. The value of the actual work Go Pro performed on the Project is a key issue, yet one for which Go Pro initially turned over virtually no information. Aug. 21 Order 8 ("Adjudication of VNI's counterclaim for breach of contract would require calculation of the value of actual work Go Pro

performed on the Project, and Go Pro has provided virtually no documentation that would enable that calculation."). Even after the Court ordered Go Pro to search for additional records, Go Pro's supplemental documentation cast little light on the actual costs incurred by Go Pro. As discussed above, Go Pro has wrongfully withheld several forms of evidence relevant to calculating those costs, and it likely has either withheld or spoliated further evidence. Without Go Pro's records, VNI would have difficulty calculating the value of the work performed by Go Pro, and therefore would have difficulty litigating this case.

Second, Go Pro's conduct has wreaked havoc on the Court's docket. Discovery should have concluded in August 2023. *See* Scheduling Order. It is now April 2024. This case is no closer to resolution, and this Court has had to hold two discovery hearings and issue multiple orders. Go Pro's misconduct has forced the Court to waste judicial resources that could have been better spent on other matters.

Third, Go Pro's "behavior has demonstrated a disrespect for the Court and a need to deter future misconduct." *U.S. Bank Nat'l Ass'n v. Poblete*, No. 15-cv-312 (BAH), 2017 WL 598471, at *6 (D.D.C. Feb. 14, 2017). Failing to abide by the Court's August 21 Order is bad enough; falsely certifying compliance is even worse. The Court cannot effectively superintend discovery if parties feel they can misrepresent their compliance to the Court with impunity. A relatively severe sanction is therefore necessary to "deter those who might be tempted to such conduct in the absence of such a deterrent." *Bonds*, 93 F.3d at 808 (quoting *National Hockey League v. Metropolitan. Hockey Club, Inc.*. 427 U.S. 639, 643 (1976)).

The Court therefore concludes that restricting Go Pro from establishing its actual costs and precluding it from opposing the findings and opinions on these costs of VNI's expert witness is an appropriate sanction under the circumstances.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that defendant/counter-plaintiff's Motion for Sanctions (ECF No. 26) is **GRANTED**; and it is further

**ORDERED** that defendant/counter-plaintiff's Petition for Attorney's Fees, Statement of Costs, and Proposed Sanctions (ECF No. 34) is **GRANTED IN PART** and **DENIED IN PART**; and it is further

**ORDERED** that, pursuant to Fed. R. Civ. P. 37(b)(2)(C) and the Court's inherent authority, within 30 days of this Order Go Pro Construction, LLC shall pay to Valsts Nekustamie Ipasumi the total of $35,153.27, reflecting VNI's reasonable expenses, including attorneys' fees, associated with its Motion to Compel; Motion for Sanctions; and Petition for Attorney's Fees, Statement of Costs, and Proposed Sanctions—as well as pleadings and hearings associated with those three motions—along with the deposition of Go Pro's corporate designee on July 6, 2023 and the deposition of Go Pro's custodian of records on January 29, 2024; and it is further

**ORDERED** that Go Pro shall be prohibited from introducing any evidence relating to actual costs Go Pro incurred on the Project and shall be prohibited from opposing the findings and opinions of VNI's expert witness Neil Sinclair on the actual costs Go Pro incurred on the Project; and it is further

**ORDERED** that within 7 days of this Order, the parties shall submit a new scheduling order for this case. The parties should submit a joint scheduling order if possible, or else should submit separate proposed scheduling orders.

**IT IS SO ORDERED.**

Date: 4/24/24

Royce C. Lamberth
United States District Judge